UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-CR-20483-ALTMAN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MICHAEL JARRETT,

        Defendant.

                                /

## MOTION FOR PRETRIAL RELEASE

Michael Jarrett, through undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. §§ 3142 and the Eighth Amendment to the United States Constitution, for an order releasing him on bond subject to conditions that will reasonably assure his appearance and the safety of the community.

### I. BACKGROUND

On December 13, 2023, the government returned an indictment charging Avin Seetaram, Somjeet Singh, and Gavin Hunter with offenses the government alleges were part of a purported murder-for-hire plot that they claim led to the death of Suren Seetal in November 2023. [ECF No. 17]. Michael Jarrett was not charged. His name does not appear anywhere in that charging document, and nothing in it suggested that he had any involvement—direct or indirect—in the alleged scheme or in Mr. Seetal's death.

Months later, in the spring or summer of 2024, FBI agents went to Mr. Jarrett's home. They informed him that he was the subject of an investigation.

They also spoke with his mother, a longtime employee of the Broward County court system. Mr. Jarrett did not run, hide, or attempt to alter his life. He retained counsel, and his attorney contacted the FBI to open a line of communication.

For more than a year after that encounter, Mr. Jarrett lived openly in South Florida. He attended Florida Technical College, worked at Dick's Sporting Goods, and lived with his family. He remained exactly where agents knew to find him—because he had nothing to hide.

On July 10, 2025, the government returned a superseding indictment naming Mr. Jarrett for the first time. [ECF No. 201]. It did not allege that he participated in the murder-for-hire conduct charged in 2023 or that he played any role in the events the government claims led to Mr. Seetal's death. Instead, it set out a new and separate allegation: that nearly four months earlier—in July 2023—he was involved in what the government characterizes as an initial attempt to kill Mr. Seetal.

Even as to that earlier alleged incident, the government's theory is narrow. They do not claim that Mr. Jarrett ever physically possessed a firearm. Although Count 8 charges a violation of 18 U.S.C. § 924(c), their position is purely vicarious—that another individual allegedly possessed and discharged a gun, and that Mr. Jarrett is culpable solely under a theory of vicarious liability based on the allegation that he drove a car. There is no allegation that he was offered or paid any money, no claim that he took part

in any later conduct, and no physical evidence corroborating the claim that Mr. Jarrett joined a murder-for-hire conspiracy.

On July 11, 2025, agents arrested Mr. Jarrett at home. With counsel present, he chose to meet with the FBI and speak with them for hours—something he had no obligation to do. Rather than refuse to engage, he answered their questions and made clear that he had no involvement in any murder-for-hire plot or other criminal conduct, and that the government's understanding of his role was wrong.

From the day of the first indictment, through the FBI's contact in 2024, to the day of his arrest nearly two years later, Mr. Jarrett's conduct has been exactly what one would expect from a law-abiding citizen prepared to meet these charges in court and clear his name.

## II. CONDITIONS OF RELEASE

Mr. Jarrett's family is prepared to take whatever steps are necessary to secure his release, including pledging his mother's retirement savings, though the defense hopes the Court will not require measures that would jeopardize her future. If released, Mr. Jarrett would reside with his mother in Tamarac, Florida—where he has lived for the past eight years. Mr. Jarrett is willing to accept any combination of strict conditions, including:

- GPS location monitoring;
- Home detention or curfew;
- Third-party custodianship;
- Travel restrictions and surrendering of his passport;
- Drug and alcohol testing;

### III. LEGAL FRAMEWORK

The Bail Reform Act presumes release on recognizance or unsecured bond unless such release will not reasonably assure the defendant's appearance or will endanger the safety of others. 18 U.S.C. § 3142(b). The Supreme Court has emphasized that in our society liberty is the norm, and detention is the 'carefully limited exception.' *United States v. Salerno*, 481 U.S. 739, 755 (1987). This principle applies with full force here.

There is a rebuttable presumption in this case under 18 U.S.C. § 3142(e)(3)(B). Once that presumption arises, Mr. Jarrett's burden is one of production—he need only come forward with some evidence that conditions of release will reasonably assure his appearance and the safety of the community. This burden of production is not a burden of persuasion, and it does not shift the ultimate burden from the government. The government retains the burden of proving risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). Where, as here, the defense comes forward with credible evidence demonstrating stable residence, steady employment, strong family ties, and a history of lawful conduct after learning of the investigation, the presumption is not simply rebutted — it carries no residual weight.

Mr. Jarrett's conduct over the past year, his deep community ties, his educational and employment history, and his willingness to accept strict

release conditions all demonstrate that reasonable conditions can assure both his appearance and community safety.

### a. RISK OF FLIGHT

The statute requires detention for flight risk only if the defendant poses a **serious** risk of flight. Serious charges alone do not meet that burden. *United States v. Giordano*, 370 F. Supp. 2d 1256 (S.D. Fla. 2005). Courts have found flight risk where defendants had significant financial resources, foreign contacts, or a history of evasion. See, e.g., *United States v. Alonso*, 832 F. Supp. 503 (D.P.R. 1993); *United States v. Jackson*, 823 F.2d 4 (2d Cir. 1987). None of that is present here.

When Mr. Jarrett learned of this investigation in 2024, he remained in his home, maintained steady work and school attendance, and lived openly for over a year until his arrest. He has no foreign ties, no access to large sums of money, no passport, and no history of evading law enforcement. His actions show reliability, not flight risk.

### b. DANGER TO THE COMMUNITY

Dangerousness must be proven by **clear and convincing evidence** that the defendant's release would actually endanger another person or the community. This standard requires more than the theoretical possibility of danger; it requires proof that future misconduct is strongly probable. See *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988).

Courts have found dangerousness where defendants had lengthy violent criminal records, made threats to witnesses, or operated ongoing large-scale criminal enterprises while on release. See, e.g., *United States v. Simpkins*, 826 F.2d 94 (D.C. Cir. 1987); *United States v. Williams*, 753 F.2d 329 (4th Cir. 1985). None of that applies here. Mr. Jarrett has no history of violence and no allegations of ongoing criminal conduct. The narrow, unproven allegations in the superseding indictment—combined with his willingness to abide by strict release conditions—do not meet the clear and convincing evidence standard.

c. **APPLICATION OF § 3142(G) FACTORS**

### 1. Nature and Circumstances of the Offense (§ 3142(g)(1))

Even under the government's theory, Mr. Jarrett is not alleged to have participated in the murder-for-hire scheme charged in the original indictment or in the events they claim led to Mr. Seetal's death. The superseding indictment focuses solely on an alleged event four months earlier, and while it charges him under 18 U.S.C. § 924(c), the theory is vicarious liability—that another person allegedly possessed and used the firearm, and Mr. Jarrett is accused of liability based solely on allegedly driving a car.

### 2. Weight of the Evidence (§ 3142(g)(2))

There is no evidence that the July 2023 incident was a failed murder-for-hire attempt. The government's characterization is speculative at best, unsupported by direct proof, and accompanied by no claim that Mr. Jarrett was paid, offered payment, or engaged in any follow-up conduct.

### 3. History and Characteristics of the Defendant (§ 3142(g)(3))

Mr. Jarrett has no history of violence, deep family and community ties, ongoing education, and steady employment. When informed of the investigation in 2024, he remained in his home and lived openly for more than a year until his arrest. Upon arrest, he met with the FBI for hours with counsel present—despite serious accusations—and made clear that the government's understanding of his role was wrong.

**WHEREFORE,** Mr. Jarrett requests that the Court order his release on bail subject to any conditions Your Honor finds will reasonably assure his appearance and the safety of the community.

**Dated: August 13, 2025**          Respectfully submitted,

**STUMPHAUZER KOLAYA NADLER & SLOMAN, PLLC**
Two South Biscayne Blvd.,
Suite 1600, Miami, FL 33131
Telephone: (305) 614-1400

*/s/ Juan J. Michelen*
Florida Bar No. 92901
jmichelen@sknlaw.com

### CERTIFICATE OF SERVICE

I certify that on August 13, 2025, I filed the foregoing document via CM/ECF, which will serve all counsel of record through the Court's electronic notification system or by other authorized means for those not receiving electronic notices.

*s/ Juan J. Michelen*